Thank you. May it please the Court, I'm Taryn Darling of Apsara Law and I'm here representing Mr. Brent Nicholson who is in the courtroom. Also in the courtroom is Mr. Jeff Thomas and Ms. Susanna Carr. I would like to reserve five minutes for rebuttal. Appellants bring two issues to the court today. The common theme in each of the issues is what the parties sign and what they contract for matters. The first issue is whether this court should reverse the district court's erroneous decision that Mr. Nicholson, who is not a party to the contract, should be liable for attorney's fees based on the provision in that contract. We ask that the court reverse because Mr. Nicholson was not a party. That's not in dispute. Also, the contract language was expressly limited to the parties to enforce the contract. That is not in dispute. And finally, because none of the parties are sometimes found liable on contract fees are not present here. The standard of review for the legal basis of attorney's fees is reviewed de novo. To recover fees against a non-party, Thrifty had to establish that Mr. Nicholson actually would have prevailed on contract fees had he prevailed. They couldn't do so because that turns on an analysis of the express contract language. The district court erred by engaging in a hypothetical analysis instead. An analysis of if Mr. Nicholson had pursued an alter ego theory or something in the like and had he established standing, then he would have been able to prevail. The district court's analysis was contrary to law, contrary to fact, and acknowledged that Mr. Nicholson didn't pursue an alter ego theory and instead it engaged in speculation. Mr. Nicholson didn't pursue an alter ego theory. He had no need because the parties that were signatories on the contract were plaintiffs as well. All of the LLCs were plaintiffs, so it would not have made sense for Mr. Nicholson to have pursued an alter ego theory. Finally, the court erroneously justified its decision by relying on an equitable estoppel argument. Misconstruing the facts in the record, this very plain pleading language generally referring to plaintiffs, and without segregating Mr. Nicholson, as to equitably estop Mr. Nicholson. The court reasoned that because they referred to plaintiffs generally when asking for attorney's fees, that Mr. Nicholson should be liable for fees. That follows a line of equitable estoppel cases that are no longer followed in the Ninth Circuit. Whether or not Mr. Nicholson pursued attorney's fees on the contract is not dispositive of the issue. The better analysis is how the cases have moved now to analyze the actual expressed language in the contract to determine the party's intent. Was the attorney's fees provision to third parties? That's that approach has been seems to been adopted by the California courts, but has the Washington of the Washington courts adopted that approach as well? Well, that's correct, Your Honor. The California courts have adopted that approach. There is not much case law in Washington on these issues. The cases in Washington are fairly distinguishable. So in the Ikemuda case, if I'm pronouncing that correctly, the court found that the the language and found it was broad enough to apply to third parties. So the Ikemuda case did subscribe to that analysis. But the case law is fairly thin in Washington. However, it's overwhelming in California. And what's relevant, I think, in both of those issues is it's analyzing the reciprocal fee statutes in both Washington and California, which are very analogous. There's no material difference. And the reasoning really tracks with our standard contract law, which has been around for centuries. You know, why would we apply? Well, equitable estoppel has a playground justice sort of feeling. Well, he said he wanted fees, so he should be liable for them. It's not based in law. We have to look. A party can perhaps plead whatever they like, but they're not entitled to it unless the law provides them that remedy. So there seem to be two exceptions to that. So the points you're making, and I think you alluded to them in a minute ago, but one is where the contract, where the non-signatory may have been a third-party beneficiary. That doesn't seem to be, that doesn't seem to apply here, right? You're correct, Your Honor. That does not apply here. And the other one is where the non-signatory is standing in the shoes. Yes, and the contract... Is there any suggestion that that applies here? There is a suggestion, perhaps, in the District Court's analysis that we believe is erroneous, Your Honor. And the District Court, when it was written, this case has been up to the Ninth Circuit before, and this particular issue was remanded for the District Court to further expound or provide additional basis on why Mr. Nicholson should, in fact, be liable. And there was no additional hearing provided at that level, but the District Court did refer generally to this language of standing in the shoes as an additional remedy. When we look, or an additional exception, when we look at the case law and we analyze what that means, it's really a determination of alter ego, which is a 13-factor analysis, which is factually determinant based upon commingling of fees and several other factors, none of which are present in the Court ever analyze factors of alter ego. So it is our position that there's simply no basis for that alternative of standing in the shoes, if you will. And, you know, the record is very clear. There's no dispute the contractual language here was expressly limited to attorneys fees to the signatories. It was it's at ER 12 through 16. The parties here too against the others to enforce compliance with any of the terms, covenants, or conditions of the lease or for damages of breach of this agreement. Again, it's not disputed Mr. Nicholson was not a party to the contract, nor was he a party to the guarantees. And the language in these leases and guarantees fall squarely within those cases that interpret such language to constrain the fee provision to the signatories. Finally, the Ninth Circuit referenced, the first go-round referenced the Reynolds case for the rule that it represents, which is you have to analyze whether the party would actually be entitled to attorneys fees. The Reynolds case is not substantially followed by most of these cases that have been decided because the Reynolds case doesn't actually analyze the language in the contract. The better cases are Blickman v. Turkus that follow this leach rule. And finally, although because the court reviews DeNovo, it bears mentioning that Thrifty did not prevail against Mr. Nicholson on the contract either with regard to these issues. But if the court has no questions about that, I will move on to the second issue. And the second issue is that because Mr. Nicholson has already appealed the district court's award at this time, we ask that this circuit court issue a contemporaneous order that the escrow funds being held to secure Mr. Nicholson's liability be released to him upon resolution. The record makes clear that the escrow account secures only Mr. Nicholson's liability to the extent that he has any. So if this court was to He does, Your Honor. That's correct. Less the amount of the rent that was overpaid and the prejudgment and post-judgment interest. So that is what we would request that the court issue a contemporaneous order saying those funds should be released less the, I believe it was $103,500, less prejudgment interest and post-judgment interest on that amount. Have you filed a motion on that issue? A motion was filed at the district court, Your Honor, and that was was denied and that was why this is rolled into the appeal. And then that's established if there's any question on the record. It's established by reviewing Mr. Nicholson's motion to stay execution on the judgment. I have the incorrect site in the briefing. That's beginning at ER 361. And that motion to stay execution really initiated the whole process of Mr. Nicholson putting the amount of funds into escrow. And it makes very clear that Brent Nicholson lacks sufficient cash at the moment to satisfy the judgment at 362, subject to a judicial charging order pending each sale such that no distribution or disbursement may be made to Mr. Nicholson or his wife without first securing the judgment. That was 364. And it expressly says Mr. Nicholson is doing this because Mr. Nicholson is saving defendants from the complex process of collection on his otherwise illiquid assets. And that's at ER 366. And I raise this for the court because I know that it's an issue that Thrifty will address. And it just defies logic that an individual would liquidate his own personal assets, put them in escrow to stay litigation against LLCs that have no assets and are not operating. It also defies logic. Why would Mr. Nicholson pursue this particular appeal if he had nothing to gain? So for these reasons, we ask that the court reverse and reverse the grant of Mr. of attorney's fees against Mr. Nicholson and in favor of Thrifty because Mr. Nicholson was not a party to the agreement. And we ask the court to issue that contemporaneous order. And with that, I will reserve. Thank you. Thank you. It pleases the court. I am Dilbert Miller representing the Appalachian Thrifty Payless and Rite Aid Corporation. With me is my colleague David Crow. This case is here on the case that was remanded by the prior ruling in this case. Remanded Judge Lasnik's award of damages against Nicholson because of what is perceived to be the sparse analysis by Judge. You mean attorney's fees? Attorney's fees. Judge Lask? Not damages. You're correct. It's attorney's fees case. They found that Judge Lasnik's analysis in awarding attorney's fees against Nicholson was sparse. I submit that Judge Lasnik's decision is very thorough and very well written and is very well reasoned. I think the problem was that Judge Lasnik indicated in his first ruling that Nicholson had asserted contract claims as one of the plaintiffs had asked for fees and that this court found to be insufficient because of not reaching the other issues such as standing in the argument. The law in California and Washington is simply the same. It's not that complicated, although there are lots of different cases because every case has attorney's fees and so the issue comes up a lot. A non-signatory to a contract can be liable for attorney's fees where he asserts contract claims. That's the first threshold. Stands in the shoes of a party to a contract or is a third party beneficiary of that contract and would have been entitled to fees if he had won. So this Court sent back to Judge Lasnik, says you've got to address this a little more carefully. It didn't reverse Lasnik's ruling on attorney's fees. It just says tell us why you did it. And that Judge Lasnik did. And that we vacated. Didn't we vacate the order? Pardon? Didn't we vacate the order? Vacated it and remanded it for further clarification. Vacated it and said do it over. The language actually of the order was because we are unable to discern either the legal or the factual basis for the district court's decision, we are unable to assess whether the district court abused its discretion. And that raises an interesting issue because we are here to see whether or not Judge Lasnik abused his discretion. That's what was sent back. They couldn't tell whether there had been an abuse of discretion and that's the test. So you're now looking at the orders entered on January 8, 2018, the order on remand, which is a specific response to this Court, and it's at ER 2 to 5, which is the order that Judge Lasnik ended responding. For the reasons set forth in the Court's order denying motion for release of funds, the Court finds that under the lease agreements, even though he was not a party to the contracts, all of the plaintiffs, including Nicholson, asserted a breach of contract claim against defendants based on the lease agreements. Given his relationship to and control over the plaintiff LLCs, Nicholson's contract was colorable, contract claim was colorable, and had he prevailed on the claim, he would have been entitled to a fee award under the terms of the contract. That's his finding. That's his order on remand. That sounds like just because he alleged that he was a plaintiff, an alleged breach of contract, the way the complaint was framed is kind of loose, because it just names the plaintiffs. Judge Lasnik. I'm just telling you, the way I read Judge Lasnik's order, it's not that it's based on the idea that he was a plaintiff alleging breach of contract and claiming fees. You had to read all three orders, Your Honor. The second order, because he says for the reasons set forth in the order denying motion for release of funds. That's where he explains in more detail and in exactly why this is the case. And the order denying motion for release of funds is, it exerts a record 12 to 16, and he explains it clearly. Based on the allegations of the complaint and the way he pursued the litigation, and that's an important point, Nicholson treated the LLC's claims as if they were his personal claims, with the damages representing an amalgam of expenses paid by Nicholson and the LLC's to bring each development to fruition. Had Nicholson been able to establish standing to enforce the terms of the lease agreements and defendant's breach, he would have prevailed on the contract claim and then been entitled to fees. And so that analysis is there. And so let's talk about what are the elements that cause it, and it's how he conducted himself and how this case was handled. There are a number of key elements that are referenced in our brief at pages 7 to 15 and are in Judge Lasnik's orders. First is the joint prosecution agreement, SER 71 to 76, where Nicholson personally claims, it confirms their agreement with the LLC, says the companies and Nicholson have a common interest in all issues in this litigation and will be jointly represented by counsel. A direct allocate, these are words from their agreement, a direct allocation of recoveries with respect to each individual company or the Nicholson's may be difficult or impossible. Companies and Nicholson agree in advance to share any funds recovered. Four creditors get paid off the top. Nicholson gets 97.5% after that. Others get something only if recovery is over $25 million. This is Nicholson's case. And that's their agreement before they filed the lawsuit. The complaint, of course, alleges contract claims on behalf of all plaintiffs. His response is to interrogatories in discovery and ask, what are your damages? His personal damages or he refers you to see responses of the plaintiff LLCs. There are no damages different for Nicholson than the LLCs. And another key element in this case, which Judge Lasnik was very familiar with in ruling on his first summary judgment motion, was the privity, the relationship of privity between the LLCs and Nicholson. This court, the district court, was required to and did for seven years we've lived with this case, and Judge Lasnik lived with the case on many, many issues. Financial ability of the LLCs to perform was a key element. The judicial estoppel defense, which led to the dismissal of the LLCs, was premised on a finding of privity because Nicholson misled the bankruptcy court in his individual bankruptcy proceeding, and the LLCs were found by this court to also be judicially estopped from asserting those claims because of this close intertwined privity between Nicholson and the LLCs. These are identical entities, and this court has so affirmed Judge Elston's finding on that. And Judge Elston, the order granting defendant's original motion for summary judgment goes into detail. That's not an order that's being attacked in this case, but it's part of the law of this case. Excerpts of records 83 to 98, Judge Elston, Judge Lasnik's original dismissal of the case because of the privity existing, because of the way the relationships were hauled, is all that. That is relevant to the finding of privity that's standing in the shoes of, if you will, here on this issue. So, Nicholson, this breach of contract case was brought by plaintiffs, including Nicholson. Nicholson brought it, controlled the prosecution, funded it, was the real party in interest looking to get 93% of any recovery, was the one who would get the millions of dollars he sought on this claim. The District Court and Thrifty have lived with this case for seven years, and we know whose case it is. It is Brent Nicholson's. The District Court has thoroughly examined the relationships between the parties, and not only did Nicholson stand in the shoes of the LLCs, he wore the pants, the shirt of his undercapitalized creations as well. Undercapitalization was a huge issue in the prior case about having to do with their inability to perform. So that's, again, just sort of the, okay, these LLCs are Nicholson. So based on all of those facts and all that history, 20 years- Can anybody ever make a finding that there was an alter ego, that there was these entities were just- Well, alter ego- These entities were just nothing, they were, you know, all the elements required for- Well, it's implicit in the finding- Well, no, I didn't ask you if it was implicit. I asked you is there a finding by anywhere in the record that there was an alter ego relationship between the LLCs and Mr. Nicholson. Counsel, there's no alter ego, but this is not an alter ego case, Your Honor. Alter ego is when Nicholson is found liable for the debts of a corporation. It's not a piercing the corporate veil. Nicholson is liable for these fees, not because the LLCs are liable. Nicholson's liable for these fees because of what he did. He brought the contract claim. He's the one that controlled the litigation. So he is directly liable whether or not the LLCs are liable or not. It's not a situation where you're trying to pierce the corporate veil to the shareholder, and that's a big distinction. Counsel wants to characterize it for that way, but that case law does not apply. You agree that he wasn't a signatory. I mean, he wasn't- He didn't sign. He's not on the contract. He did not sign, but all the case law analyzed by the judge goes into detail about why and what are the abuse of discretion for Judge Lasnik to have so found. Whether you did it on a substantial evidence standard, it is up to the judge applying equitable principles. It's not equitable estoppel, necessarily, but equitable principles do enter into a judge's exercise of discretion against whom to afford attorneys' fees and in what amount. And that is simply what this case is about. Our best briefs are Judge Lasnik's original summary judgment order and his three orders. There are three of them that he entered in response to this Court's remands. And he answered those questions completely. He's explained his reasoning, and he has not abused his discretion, and I think they should be respected. So now let me address briefly the issue about the escrow agreement. This is the most outrageous part. Thrifty created the $2.2 million. Nicholson, very successful, very wealthy real estate developer, had in his prior life, before this litigation, before the crash of 2008, had in fact succeeded in building Rite Aid stores. And on a bill that suit leases, he became the owner of those stores. And Rite Aid paid the rent, which made then that he ends up owning them after 20 years, a great business. His timing on this case was not so good, because 11 started in 2008, and everything went to hell, pardon my French. But the point is, after his bankruptcy, and after the ruling against him, we're trying to enforce the judgment, and all of a sudden he says, no, no, no, he couldn't post a supersedious bond. So we have this fight over whether we're going to attach assets, and he moves to stay enforcement of that. And he comes up, and it's dangerous, but he'll offer alternate security. Just a second. In lieu of a supersedious bond, so he says, I've got some stores. And he had a couple of Rite Aid stores that he owns that he had built successfully before this period in history. And he had a buyer, and the issue was, well, if the lease were longer, the store would be worth more, because a well-tenanted commercial property is worth a lot more if it's a longer lease than this. And so Rite says, okay, and so he says, right, well, you guys want to extend your lease. This is in Moses Lake. He says, yeah, we'll extend the lease. However, that's going to increase the value of the store and the amount of money you get when he's trying to sell it, because he's trying to sell these assets. He says, well, look, if we raise the rent, which increases the renew from the sale of that store, we want that money to go into the escrow to pay us our fee, so we have security for collecting our fees, assuming that the courts ultimately affirm the award of fees. He says, okay, fine. And so that's what the First Amendment lease does. We agree to extend the lease beyond what we had to. And just hypothetically speaking, suppose we don't affirm the fee award. Then what happens to the money? Well, this is the point that I'll get to, because in paragraph 13 of the lease, the extension of the lease says, in the recent case, tenant acknowledges that landlord intends to offer its interest in the premises for sale. In the recent case of Brent Nicholson versus Thrifted Payless, a judgment and an award of attorney's fees has been entered in favor of defendants against landlord's member, Brent Nicholson, and other plaintiffs, the LLCs. All right, and that's defined. That becomes a defined term in this document, quote, tenant's claim. Tenant's claim is the judgment against Brent Nicholson and the LLCs. So it's against both. It secures those claims. And so if you go on to the language of the document, then it goes on to say that if, depending on how the court rules, this serves as security. And the escrow agreement was it serves as security for debtor's tenant's claim. And tenant's claim includes the claim against both the LLCs and Nicholson. That's the answer to that. So even if Nicholson were relieved of his liability, which he should not be, that's secure. We have to go chase other stuff, but that $2.2 million, which would not be adequate, is available to satisfy the claims against the LLCs as well as the claim against Nicholson. And if Nicholson, who was the bankrupt after this case, could come up with $2.2 million, well, what about the creditors of the bankruptcy? For them now him to say, well, we created the $2.2 million by expanding the lease, and now for him to get away with taking it away would be a gross miscarriage of justice. I'm afraid you're over your time. Oh, you're right. I'm sorry. No abusive discretion. No abusive discretion. The district court should be affirmed. Order should issue authorizing release of the escrowed funds to Thrifty. And we would like to be awarded fees on this appeal. Thank you. Thank you. Okay, we'll have Republican. Thank you. Thank you. The district court's ruling is erroneous on its face. On ER 14 through 15, the district court states, although he does not specifically allege the legal theory under which he sought to enforce the contracts, the factual allegations of the complaint suggest that the LLCs were his alter egos and or that he was a third-party beneficiary. The law, if we are going to require a non-signatory to be responsible for attorney's fees in which he was not a party, the law requires more than a suggestion in a complaint. There's no finding on alter ego anywhere in this case. The district court, in fact, acknowledged it. The Thrifty and the district court, to a large extent, rely upon the estoppel argument. And the case of Blickman v. Turkus shines a lot of light on the rationale as to why that is disregarded. It states, we know of nothing in our law that justifies awarding such fees to a party merely because his opponent asks for them. Certainly, Section 1717A does not create such a regime. The better rule is the one stated in Leach. A party claiming fees under 1717 must establish that the opposing party actually would be entitled to receive them if he or she had been the prevailing party. Finally, with regard to the second issue, the lease, as addressed by Thrifty, does not answer the question about who's securing what for the tenant's claim. If we go through the analysis on those escrow documents, the various documents are very clear that they are signed by Mr. Nicholson and by Thrifty and by the bank as parties. The LLC is not a party to any of those agreements. The LLC are not listed as parties in any of those agreements. And what answers the question most clearly, again, is at ER 361, which is, if the other documents, which is the amended lease agreement, Hang on, I can flip there. The other agreements, the interim agreement regarding alternative security bond, that's at ER 322, the first amendment to the lease at ER 324. They state that Mr. Nicholson has a pending motion for stay on appeal and provides that Mr. Nicholson has agreed that his share of the proceeds will be held in escrow as security for payment of tenant's claims. It does say for security of payment of tenant's claims. What it doesn't say is on behalf of Mr. Nicholson and the LLCs. Thrifty would like you to read into that language on behalf of Mr. Nicholson and the LLCs. It's silent on that issue. And then that question is resolved when we look back at that motion to stay, and fee order pending appeal at 361 through 368, where it's very clear that Brent Nicholson was liquidating the asset, that Brent Nicholson was putting it, was seeking a stay, because they could execute against Brent Nicholson, against his assets. The LLCs had no assets, so there was no need to seek a stay on behalf of the LLCs and no need to place a bond on behalf of the LLCs. Finally, we ask that this Court reverse the erroneous decision that Mr. Nicholson, a non-signatory to the party, was liable for attorney's fees, and we ask this Court to issue a contemporaneous order dispersing the escrow funds less the amount of $103,500 plus the prejudgment and post-judgment interest.  Thank you, Counsel. I thank both Counsel for the excellent advocacy. And this case, the Thrifty case, is now submitted. And the Court will take a recess for 15 minutes.
judges: Gould, Paez, Jack